UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No:  2:13-cr-145-FtM-29CM

QUINTON PAUL HANDLON.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

### I.      Introduction

This cause is before the Court on Defendant Quinton Paul Handlon's ("Defendant")
Motion for Pre-trial Suppression Hearing ("Motion to Suppress") (Doc. 20) filed on January 8,
2014.  The Government filed a Response to Defendant's Motion to Suppress (Doc. 27) on
January 22, 2014.  Defendant is charged with: (1) violating 18 U.S.C. §§ 2251(a) and (e) at an
unknown date, but about June 25, 2009 through February 2, 2013; (2) during that same time
period, violating 18 U.S.C. §§ 2252(a)(2) and (b)(1); and (3) during that same time period,
violating 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).  This matter was referred to the Court for a
report and recommendation and an evidentiary hearing was held before the undersigned on
January 30, 2014.  For the reasons explained below, the Court respectfully recommends that
Defendant's Motion to Suppress be **DENIED**.

### II.     Evidence

The Government presented the testimony of one witnesses, Task Force Agent Christopher
Tissot of the Federal Bureau of Investigations.  The Government introduced two exhibits into
evidence: Exhibit 1, a warrant for the arrest of Defendant dated May 6, 2013; and Exhibit 2, a

search and seizure warrant for Defendant's residence dated May 7, 2013.  Defendant presented

the testimony of one witness, Detective Kevin Connolly of the Charlotte County Sheriff's Office.

### A.  Testimony of Task Force Agent Christopher Tissot

Agent Tissot testified that he is a task force agent with the FBI's child exploitation task

force.  He has been a task force agent for the FBI for a little over a year and has been employed

by the Charlotte County Sheriff's Office for approximately twelve years.  He became involved

in an investigation of Defendant after being contacted by Detective Kevin Connolly of the

Charlotte County Sheriff's Office in 2013.  The investigation involved a crime where the

defendant had sexually battered his niece and child pornography was possibly involved.  As part

of the investigation, Agent Tissot participated in obtaining a search warrant of Defendant's

residence which is located in Tallahassee, Florida.  Agent Tissot testified that the alleged crimes

occurred in Charlotte County, Florida which is in the Middle District of Florida.

Agent Tissot and Detective Connolly travelled to Tallahassee, Florida and met with FBI

agents.  On the morning of May 8, 2013, the police officers and FBI agents waited for Defendant

to approach his vehicle outside of his residence.  As Defendant approached his vehicle, Agent

Tissot and Detective Connolly approached Defendant.  Agent Tissot told Defendant that he was

being detained and that FBI agents were clearing his residence.

Agent Tissot testified that he remained outside of Defendant's residence for

approximately twenty minutes while the other officers executed the search warrant.  While

outside, Agent Tissot and Defendant remained silent.  After the other officers had completed

their search of the home, Agent Tissot and Defendant returned within the home.  At this time,

Agent Tissot explained to Defendant that the police officers had a federal search warrant for his

residence and a state arrest warrant from Charlotte County for an incident that occurred with his

niece, the victim.  Agent Tissot testified that Defendant had a puzzled look on his face at this time.  Agent Tissot then commented to Defendant that for the past week and a half Defendant was not communicating with the victim, but was in fact talking to an undercover agent.  Agent Tissot testified that the Defendant responded and said he knew it was not the victim because she sounded different.

After this exchange, Agent Tissot and Detective Connolly sat down with Defendant and began a taped statement.  At this time, Detective Connolly read Defendant his *Miranda* rights, which Defendant then invoked.

For background information, Agent Tissot explained that for approximately a week and half prior to the execution of the search warrant, an undercover detective had taken over the victim's email account and had posed as the victim in email communications with Defendant.  Agent Tissot explained that his purpose in making his statement to Defendant was to explain the basis of his arrest.  Agent Tissot testified that he did not make the statement for the purpose of eliciting a response from Defendant.

On cross examination, Agent Tissot testified that he had personally advised Defendant that he was being detained and that Defendant was not free to leave.  Agent Tissot testified that Defendant did not ask any questions while he was detained outside his house for the twenty minutes while the other officers searched his home.  Agent Tissot approximated that fourteen armed police officers were present at the home during the operation.  Agent Tissot reiterated that he made his statement to Defendant before Defendant was read his *Miranda* rights.  Agent Tissot testified that Defendant did not say anything at all until Agent Tissot made the comment at issue to Defendant.

**B.  Testimony of Detective Kevin Connolly**

Next, Defendant called Detective Kevin Connolly of the Charlotte County Sheriff's Office to the stand.  Detective Connolly testified that he has been employed with the Charlotte County Sheriff's Office for seven to eight years and that he has been a police officer for over thirty years.  Detective Connolly was present at the search at Defendant's residence in Tallahassee.  Detective Connolly testified that he and a Special Agent Sanford of the FBI approached Defendant as he was exiting his home.  Detective Connolly testified that Agent Sanford advised Defendant that there was a warrant for his arrest.

On cross examination, Detective Connolly testified that Agent Tissot approached Defendant and informed him that there was a search warrant for his residence a few seconds after Agent Sanford had informed Defendant that there was a warrant for his arrest.

**III.    Analysis**

Defendant argues that the statement he made in response to the comment of Agent Tissot should be suppressed because it was elicited by law enforcement during custodial interrogation without a warning pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). (Doc. 20 p. 7). Defendant argues that Agent Tissot's comment was a gratuitous remark intended to undermine Defendant's right to counsel and right against compulsory self-incrimination. (Doc. 20 p. 7).

The Government responds that Defendant's statement should not be suppressed because Agent Tissot's remark to Defendant was not an interrogation for *Miranda* purposes. (Doc. 27 p. 4).  The Government argues that Agent Tissot had no reason to know that his statement to Defendant would elicit an incriminating response and, thus, it was not functionally equivalent to an interrogation. (Doc. 27 p. 3-4).

Law enforcement officers may not conduct a custodial interrogation unless the person questioned is first "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda,* 384 U.S. at 444 (1966).  Statements elicited by law enforcement during custodial interrogation but absent such a warning are constitutionally inadmissible. *Id.* at 464.  "*Miranda* safeguards come into play whenever a person in custody is subject to either express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980).  "[B]efore [*Miranda*] warnings need be given, it must be established that the [defendant] was both 'in custody' and under 'interrogation' by police officers." *United States v. Castro,* 723 F.2d 1527, 1530 (11th Cir. 1984).  Therefore, the "custodial interrogation" requirement of *Miranda* has two facial requirements, custody and interrogation. *U.S. v. Kramer,* 2008 WL 169615, at *3 (S.D. Fla. Jan. 16, 2008) (citing *Innis,* 446 U.S. at 300).  In determining whether Defendant's comment to Agent Tissot should be suppressed, the Court must determine: (1) whether Defendant was in custody at the time Agent Tissot made his remark, and (2) whether Agent Tissot's remark constitutes an interrogation.  The Court will address each issue in turn.

### A.  Whether Defendant was in Custody at the Time Agent Tissot Made His Remark

"A suspect is in custody for the purposes of *Miranda* when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *U.S. v. Street,* 472 F.3d 1298, 1309 (11th Cir. 2006) (citing *U.S. v. Brown,* 441 F.3d 1330, 1347 (11th Cir. 2006)).  In this case, the testimony elicited at the hearing shows that Defendant was approached by Detective Connolly and Agent Sanford as he was leaving his home and approaching his vehicle.  Agent Sanford advised Defendant that he had a warrant to arrest Defendant.  Seconds later, Agent Tissot also approached Defendant and told Defendant that he was being detained.

Agent Tissot testified that Defendant was not free to leave after being detained.  Approximately fourteen armed law enforcement officers participated in the execution of the search and arrest warrants.  Given these circumstances, the Court finds that Defendant was in custody at the time Agent Tissot had their exchange.  Next, the Court must determine whether Defendant was subject to an interrogation or its functional equivalent.

### B.  Whether Agent Tissot's Remark to Defendant Constitute an Interrogation

As a preliminary matter, the Court notes that the parties agree that Agent Tissot's remark do not constitute an express questioning.  At issue, then, is whether Agent Tissot's remark were the functional equivalent to an interrogation for *Miranda* purposes.  In its Response to Defendant's Motion to Suppress, the Government argues the Eleventh Circuit has held that when an officer confronts a suspect about evidence against him and the suspect gives an incriminating response, the officer's behavior does not violate *Miranda* because the officers who made the initial statements could not reasonably have known that their statements would elicit a response. (Doc. 27 p. 3).  Citing to a Seventh Circuit case, *U.S. v. Ambrose,* 668 F.3d 943 (7th Cir. 2012), Defendant argues that whenever a police officer, prior to a *Miranda* waiver, advises the person in custody about incriminating evidence, the officer has functionally interrogated the person.  An officer may inform a person under arrest of the reasons for their arrest, but may not present them with incriminating evidence until *Miranda* warnings are given.

In the context of *Miranda*, interrogation encompasses express questioning and its "functional equivalent." *Arizona v. Mauro,* 481 U.S. 520, 526 (1987) (quoting *Innis,* 446 U.S. at 309)).  "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to words or action on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Innis,* 446

U.S. at 301.  The issue of whether a person has been subjected to the functional equivalent of an interrogation is more than simply a finding of historical fact, but is a mixed question of law and fact. *Endress v. Dugger,* 880 F.2d 1244 (11th Cir. 1989).  "A court must evaluate the facts to determine whether the police should have known their conduct was reasonably likely to elicit an incriminating response." *Id.*  The focus of the inquiry is the perception of the defendant, not the intent of the officer. *Arizona v. Mauro,* 481 U.S. 520, 527 (1987).

The Eleventh Circuit has addressed the issue of functional interrogation in an unpublished opinion *U.S. v. McKenzie* 132 F. App'x 788 (11th Cir. 2005).[1]  In *McKenzie,* the Eleventh Circuit affirmed the conviction of a defendant who was convicted based in part on a pre-*Miranda* statement. *Id.* at 788-89.  In the case, police officer's executed a search warrant for illegal drugs at the defendant's residence while the defendant was not present. *Id.* at 789.  During the search, the police officers found ammunition, marijuana, and some cocaine residue. *Id.*  While executing the warrant, an officer saw the defendant approaching and placed him under arrest for failure to pay child support. *Id.*  The officer did not read the defendant his *Miranda* rights. *Id.*  After being arrested, the defendant continually talked to the officer, often in an abusive manner, even though the officer's requested the defendant to stop talking on numerous occasions. *Id.*  At some point a police officer informed the suspect that marijuana and cocaine had been found during the execution of the search warrant. *Id.* In response to this statement, the defendant stated that he smoked marijuana. *Id.*  The Eleventh Circuit held that the officer's statement to the defendant was not the "functional equivalent" of an interrogation because the officer should not have known that his statement would have elicited the response it did. *Id.* at 790.  The Eleventh Circuit also

---

[1] Unpublished opinions of the Eleventh Circuit are not considered binding authority, but may be cited as persuasive authority. 11th Cir. R. 36-2.

noted that the police did not use an unusual degree of force or psychological tricks like those mentioned in *Innis*.

In line with *McKenzie*, the Court finds that Agent Tissot's remark to Defendant does not constitute a functional interrogation. Like the officers in *McKenzie*, Agent Tissot did not question Defendant, but informed him of the existence of incriminating evidence. Under the circumstances, the Court finds that Agent Tissot's comment was not reasonably likely to elicit an incriminating response. The Court notes that Agent Tissot's comment was not accompanied with an unusual degree of force or psychological trick like those mentioned in *Innis*. *See McKenzie,* 132 Fed. App'x at 790. The record shows that Agent Tissot made his comment to Defendant as preparations were being made to take a videotaped statement, nearly twenty minutes after Defendant was first detained. During this time period Agent Tissot had not communicated with Defendant and Defendant had not spoken. Given Defendant's silence, Agent Tissot could not reasonably expect that his remark would elicit an incriminating response. As noted by the Eleventh Circuit in *U.S. v. Suarez,* 162 Fed. App'x 897, 901 (11th Cir. 2006), "[t]he Supreme Court has explained that the concern motivating *Miranda* was that the interrogation environment created by the interplay of interrogation and custody would subjugate the individual to the will of his examiner and thereby undermine the privilege against compulsory incrimination." (citations omitted). The facts of this case show that Defendant was not subjected in any way to the type of "interrogation environment" the Supreme Court was concerned with in *Miranda*.

Defendant argues that the Eleventh Circuit's holding in *McKenzie* is inapplicable to this case because the defendant in *McKenzie* continually talked to officers after being arrested whereas the Defendant in this case was silent until spoken to by Agent Tissot. The Court

disagrees.  In *McKenzie*, the Eleventh Circuit analyzed whether the officer should have known that his comment would elicit an incriminating response.  Thus, the Eleventh Circuit's analysis focused on the comments of the police officer.  The Eleventh Circuit noted the defendant's continual talking, but addressed this fact in its determination that the defendant's comments were voluntary.  Here, the Court finds that Defendant's complete silence weighs in favor of the position that Agent Tissot could not reasonably know that his remark would elicit a response.

At the hearing, Defendant seemingly argued that a bright-line rule exists that whenever police officer's confront a suspect with incriminating evidence prior to the suspect being warned of their *Miranda* rights, such a confrontation is likely to elicit an incriminating a response and is, therefore, a functional interrogation.  Such an ultimate rule does not exist.  Although Defendant correctly noted that the Seventh Circuit found that the presentation of incriminating evidence to the defendant in *U.S. v. Ambrose,* 668 F.3d 943 (7th Cir. 2012) was a functional interrogation, other appellate courts have held that confronting suspects with incriminating evidence is not the functional equivalent of interrogation.  For example, besides the Eleventh Circuit in *McKenzie*,

> in *Caputo v. Nelson,* 455 F.3d 45, 50–51 (1st Cir. 2006), the court held the state court had not unreasonably applied *Innis* and *Miranda* in determining that confronting a suspect with evidence against him did not rise to the functional equivalent of interrogation. Similarly, in *United States v. Payne,* 954 F.2d 199, 203 (4th Cir.1992), the court observed that whether police descriptions of incriminating evidence constitute the functional equivalent of interrogation "will depend on circumstances that are too numerous to catalogue."  After acknowledging the deference due to the trial court on such matters, the court held a police discussion with the suspect about incriminating evidence did not constitute interrogation because it was not reasonably likely to elicit an incriminating response and the suspect was not subjected to "compelling influences, psychological ploys, or direct questioning." *Id.* (quoting *Arizona v. Mauro,* 481 U.S. 520, 529, 107 S.Ct. 1931, 95 L.Ed.2d 458); *accord Enoch v. Gramley,* 70 F.3d 1490, 1500 (7th Cir.1995) (identifying the victim and briefly stating the evidence is not the functional equivalent of interrogation).

*U.S. v. Wilson,* 2012 WL 3101706, at \*11 (M.D. Fla. July 13, 2012).  Contrary to Defendant's argument during the hearing, there is no bright-line rule that an officer's presentation of incriminating evidence to a suspect prior to a *Miranda* warning is an interrogation.

### IV.    Conclusion

Although Defendant was in custody when Agent Tissot made his remark, this remark was not the functional equivalent of an interrogation.   For the reasons explained above, it is respectfully recommended that Defendant's Motion to Suppress be **DENIED**.

Failure to file written objections to the proposed findings and recommendation contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended in Chambers in Fort Myers, Florida on February 11, 2014.**

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties